WEBB v. CHISOLM.

1. A purchaser cannot be compelled to take a doubtful title, but the court acts on moral certainty, and a purchaser will not be permitted to object to a title on account of a bare possibility. *Laurens* v. *Lucas*, 6 *Rich. Eq.*, 222, recognised and followed.

2. Where an executrix and life tenant had full power under the will to sell the land devised and make titles therefor, provided the proceeds "be reinvested in bank or other stocks or other property," her deed made under this power carried a good title, and it was not the duty of the purchaser to see to the proper application of the purchase money, in the sense that a misapplication of the same could defeat his title. The same principle applied to another power in this case.

3. But the purchaser having given his bond and mortgage for the purchase money, and all of the adult remaindermen, except two, having released their interest therein to him, one of those two being largely indebted to the purchaser, and the other not heard from in twelve years, and the only infant having signed this release and not complained for six years after his majority—there was not any misapplication of the purchase money.

4. A deed properly executed, even if improperly probated, is binding on the maker.

5. In action for specific performance of an agreement to purchase a city lot, the Circuit Judge may, in his discretion, decree that each party pay his own costs.

Before PRESSLEY, J., Charleston, June, 1885.

The opinion sufficiently states the case.

*Mr. J. Bachman Chisolm*, for appellant.

*Messrs. Rutledge & Young*, contra.

March 27, 1886.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.  On February 4, 1885, William L. Webb and William B. Chisolm entered into a written agreement by which the said Webb agreed to sell to the said Chisolm a lot of land in the city of Charleston, described in the complaint, for $2,000, to be paid one-fourth cash, and the remainder in two equal successive annual instalments, secured by a mortgage of the premises sold.    Afterwards the purchaser, Chisolm, declined

to pay the purchase money, on the ground that the said Webb could not make good titles to the same. Whereupon this action was brought by Webb for specific performance of the agreement, and the following is an agreed statement of the facts :

The lot in question was a part of a tract of land formerly the property of Daniel Cannon Webb, the father of the plaintiff, who died in 1850, leaving a will of which his widow, Eliza Ann Webb, was the sole qualified executrix. The tract of land, of which the lot in question was a part, passed under the residuary clause of his will, which declares, "that the whole of the residue of my estate, both real and personal, I give to my beloved wife, Eliza Ann Webb, for her natural life, and after her death I give the same to my beloved children, share and share alike. * * * But should my beloved wife (in whose prudence and good judgment I have for forty-three years placed implicit confidence) deem it expedient for her comfort or convenience, or the interest of herself and family, to sell any part of my estate, she is hereby authorized to make such sale in public or private, and to make good and sufficient titles for the same ; provided, however, that the moneys arising from such sale be reinvested in bank or other stocks or other property, to be held by her during her life as aforesaid, and to go to my children as aforesaid at her death."

The children of the testator were John Webb, Thomas L. Webb, Martha C. Johnstone, and William L. Webb. On June 27, 1867, Mrs. Eliza A. Webb, the life-tenant with a power of sale, after reciting the terms of the power, and expressly in pursuance thereof, and in consideration of $9,000, sold and conveyed the aforesaid tract of land, of which the lot in question was a part, to her son, W. L. Webb, as trustee for his wife, Susan W. Webb, and children. As to the terms of this conveyance we will speak more particularly hereafter. Contemporaneous with the execution of this deed to William L., as trustee, he executed a mortgage of the premises to secure his bond ($9,000) for the purchase money. In November, 1870, Mrs. Webb, the mortgagee, assigned the bond and mortgage "for value" to R. H. McDowell, and on February 12, 1885, he entered on the mortgage satisfaction as follows : "The bond secured by this mortgage

having been paid in full, I hereby declare said bond and mort-gage forever satisfied and discharged."

By deed of July 23, 1873, the other devisees of the father, D. C. Webb, in consideration of moneys due by them to William L. Webb, the purchaser, released to him their interest in the bond and mortgage. This deed was duly executed by the widow and all the children of John Webb[1] and by the husband and all the children of Martha W. C. Johnstone (born Webb), and duly probated, except that the signature of F. W. Johnstone, son of Martha, although signed in the presence of two witnesses, was not proved by either of them. But on August 13, 1873, the said F. W. Johnstone went before James M. Watson, a notary public, in Wilmington, Delaware, "duly commissioned," and acknowledged the signature to the said release to be his free act and deed, and desired that it should be put on record. George[2] and Charles Webb, children of John Webb, deceased, were not of age in 1873; Charles executed the release when a minor for valuable consideration, and came of age in 1879, and makes no objection. Thomas L. Webb mortgaged his interest to his brother, Wm. L. Webb, in July, 1871, for "a sum greatly in excess of his interest in the property," left the State unmarried, and has not been heard from since 1874, and is considered by his family dead.

As before intimated, the deed of Mrs. Eliza A. Webb to her son, William L. Webb, in execution of the power of sale in the will of her husband, D. C. Webb, was in trust for his wife, Susan W. Webb, and children, and itself contained another power of sale on his part. The trusts are long and somewhat complicated, and may be found in the brief. Among other things, the power is given to W. L. Webb to dispose of the land by will, substan-tially for his wife during her life, and after her death for his chil-

---

[1] Except by Thomas L. Webb, the son of John, who left the State a young man, prior to July, 1873, was last heard from in 1874, and is believed by his family to be dead. Thomas L. Webb, the brother of William L., mortgaged his share in the property to William L. for a sum greatly in excess of his interest in July, 1871, and died in April, 1872. The opinion has confused this uncle and nephew of the same name.—REPORTER.

[2] George duly executed a release after he came of age. No question was made about George's interest.—REPORTER.

dren, absolutely, who may be living at the time of her death. The children are two daughters, both of age. In addition, the trust deed to William L, contained a power of sale in the following words: "Provided always, furthermore, that the said W. L. Webb shall, from time to time, and at all times, have full power to sell, barter, exchange, alien, or otherwise dispose of all and singular the aforesaid property, or any other property representing the same: Provided, however, that the proceeds of such sale, barter, exchange, alienation, or other disposition, shall be reinvested in such securities, real or personal, or both, as to the said trustee shall seem fit ; and held by him, subject to the trusts hereinbefore declared of and concerning the same ; and should the said property not consist in a house, whereby a house can actually be provided as aforesaid, then the annual proceeds arising therefrom shall be applied in such a way as substantially, and as near as possible, to carry out the above said trusts, by applying the annual proceeds thereof to such as would be entitled to a home in any house representing the said property as aforesaid." In February, 1883, William L. Webb, trustee, his wife and two daughters, under this power mortgaged the land to Gourdin, Matthiessen & Co., which mortgage was substituted by another in July, 1884, to secure said Gourdin, Matthiessen & Co. against certain endorsements made by them for Mr. W. L. Webb, but the lien of this mortgage has been lifted from so much of the land as the lot bargained to be sold as aforesaid to Chisolm. The deed tendered to Chisolm by W. L. Webb, trustee, was also executed under this power.

The cause came on to be heard by Judge Pressley, who decreed "that the defendant do comply with his purchase and accept the deed tendered to him in compliance with the contract of sale and purchase, and that each party pay his own costs."

From this decree, the defendant appeals upon the following grounds: "I. Because his honor erred in holding that William L. Webb, trustee, 'has sufficient interest in the land to enable him to give good title to the portion sold to defendant'; whereas his honor should have held that the plaintiff did not have a good marketable and unencumbered title to the premises. II. Because his honor erred in ordering the defendant to comply with his

purchase, and accept the deed tendered to him in compliance with the contract of sale and purchase.    III.  Because his honor erred in ordering 'that each party pay his own costs'; whereas he should have ordered that plaintiff pay all the costs."

In considering the question as to whether agreements for the sale and purchase of lands shall be enforced by the order of the court, the following rule seems to have been adopted : "A purchaser cannot be compelled to take a doubtful title.    But on this subject the court acts on moral certainty, and a purchaser will not be permitted to object to a title on account of a bare possibility."    *Laurens* v. *Lucas,* 6 *Rich. Eq.,* 222, and authorities there cited.    Taking this rule as our guide, let us see how this case stands.    First, as to the devisees under the will of D. C. Webb. This land was given to the widow, Eliza A., for life with limitation over to his children, who were four in number, viz,, John, Thomas L., Martha C. Johnstone, and William L. Webb.    The life tenant was also executrix, and had, under the will, a very full power "to sell in public or private, and to make good and sufficient title for the same," &c., provided that the moneys arising from said sale be invested in stocks or property upon the same trusts.    Under this power Mrs. Webb sold and conveyed the land to her son, William L. Webb, as trustee, and received the purchase money.

We cannot doubt that her conveyance carried the legal title to William L. Webb, and that it was not his duty to look after the proper application of the purchase money, in the sense that a misapplication of the same could defeat his title.    See *Lining* v. *Peyton,* 2 *DeSaus.,* 378, and notes ; *Spencer* v. *Bank, Bail. Eq.,* 472 ; *Redheimer* v. *Pyron, Speer Eq.,* 140, and *Jones* v. *Hudson,* 23 *S. C.,* 494.    But if this were not so, and the title of William L. Webb from his mother depended upon the proper application of the purchase money, we think it appears to a moral certainty that there was no misapplication as to the devisees of D. C. Webb.    The parties themselves or their representatives have in effect admitted its proper application.    In 1873, all the remaindermen (with the exception hereafter stated), "in consideration of moneys advanced and paid to them" (a larger amount than

their interest in the bond and mortgage), released their respective shares to William L. Webb.

It is said, however, that the signature of F. W. Johnstone, one of the children of Martha, was never formally proved by the affidavit of the subscribing witnesses. There is nothing in that. It is not denied that he signed it, and went before a notary public in the State of Delaware and declared that it was his act and deed, and he desired it recorded. The release binds him whether it was recorded or not.

Then it is said that Charles, one of the children of John, was a minor when he signed with his family. It appears that it was for more than full consideration, and it was not void but voidable. He came of age in 1879, and has made no claim for his share of the purchase money, and we do not think it at all probable that he will ever claim that there was a misapplication of the purchase money, to the extent of his very small share; and if he does, he will not succeed.

But it is still further objected that Thomas L. did not sign the release. That is true; he was not in the State in 1873, when the release was executed. He was a young man without family, and in 1871 he executed a mortgage to his brother, William L. Webb, of all his interest in his father's estate, for a debt largely in excess of his interest in the property, and then left the country. He has never been heard from since 1874, and is presumed to be dead; but if he is not dead in fact, his mortgage is at least evidence that there was no misapplication of the purchase money to the extent of his share.

Second. Then as to the rights of the wife and two daughters of W. L. Webb under the trusts of the deed from Eliza A. Webb to the said William L., as trustee. That deed carried the legal title to William L. Webb, and also gave him full power to sell; and it was under this power that the agreement was made by him to sell part of the premises to the defendant, William B. Chisolm. We know of no reason why the authorities above cited as to the sale and conveyance of Eliza A. Webb to her son, William L., under the power in her husband's will, should not be applicable to the sale and tender of title by the said William L., under the power in the deed to him from his mother, Eliza A. Webb. The

children of William L. Webb are of full age.   If William L.
Webb, acting under the said power, and with the consent of the
*cestuis que trust*, had the right to execute a valid mortgage to
Gourdin, Matthiessen & Co., we think he may certainly make a
valid sale and conveyance to the defendant, Chisolm.   We can
not see that there is anything in the view suggested that said
mortgage was executed before formal satisfaction was entered on
the original mortgage given by William L. Webb to his mother.
That mortgage, as we have seen, is now undoubtedly satisfied,
and that of Gourdin, Matthiessen & Co. has been released to the
extent of the lot now in question.   We agree with the Circuit
Judge, that the deed tendered to the defendant, Chisolm, carried
a good marketable title.

As to the third exception, in relation to so much of the decree
as required "each party to pay his own costs."   This was a suit
in equity for specific performance, and it was within the discretion
of the Circuit Judge to direct the payment of the costs, "as a
part of the relief given on the final disposition of the cause ;"
and we see no good reason for interfering in the matter.

The judgment of this court is, that the judgment of the Circuit
Court be affirmed.